Filed 5/11/16  P. v. Alvarez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JAMES ALVAREZ,<br><br>        Defendant and Appellant. | F069040<br><br>(Super. Ct. No. BF151478A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

James Alvarez was prosecuted for attempting to kill his girlfriend by running her over with a car.  When the matter was submitted to a jury, the trial court, over objections from both the prosecutor and defense counsel, provided instructions on the crime of

attempted voluntary manslaughter as a lesser included offense of attempted murder. The jury convicted Alvarez of attempted voluntary manslaughter and also found him guilty of assault with a deadly weapon and resisting arrest. He was sentenced to a determinate term of 16 years in prison.

Alvarez contends that the trial court erroneously precluded an eyewitness from giving opinion testimony regarding whether or not he actually tried to hit the victim with an automobile. He further alleges there was no showing of provocation to support a lesser included offense instruction, and thus seeks reversal of the attempted voluntary manslaughter conviction on grounds of insufficient evidence. The first claim involves an exercise of discretion by the trial court, and Alvarez does not carry his burden of showing error and prejudice. With respect to the latter claim, we conclude that although evidence of provocation was missing, the outcome of the appeal is governed by the California Supreme Court's holdings in *People v. Powell* (1949) 34 Cal.2d 196 (*Powell*) and *People v. Lee* (1999) 20 Cal.4th 47 (*Lee*). Those cases stand for the principle that a defendant may not complain of an error inuring to his or her benefit, "including the giving of correct, but inapplicable, instructions and return of a verdict of an offense less than that which the evidence shows." (*Lee*, *supra*, 20 Cal.4th at p. 57.) Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Kern County District Attorney charged Alvarez by information with attempted murder (Pen. Code,[1] §§ 187, 664; Count 1), assault with a deadly weapon (§ 245, subd. (a)(1); Count 2), making criminal threats (§ 422; Count 3) and misdemeanor resisting arrest (§ 148, subd. (a); Count 4). He was also accused of having suffered a prior strike and serious felony conviction (§§ 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)), and having served a prior prison term (§ 667.5, subd. (b)). Count 3 was

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

later dismissed due to the prosecution's inability to produce the complaining witness. The case went to trial in January 2014.

Prosecution Evidence

On August 3, 2013, a 911 dispatcher for the Kern County Sheriff's Office spoke to an anonymous caller who had witnessed "some guy beating up some lady" inside of a Ford Taurus at the corner of Lake Street and Mt. Vernon Avenue in Bakersfield. The perpetrator was described as a bald Hispanic male with tattoos on his head, wearing a white tank top shirt. Deputy Matt Costamagana was dispatched to investigate the reported incident. He thereafter observed the subject events from his patrol vehicle while stopped at a traffic light at the intersection of Mt. Vernon Avenue and Niles Street.

Deputy Costamagana testified to seeing a Ford Taurus "jump the center median going west across four lanes of traffic on Mt. Vernon from Lake Street" at an estimated speed of 35 to 40 miles per hour. The Taurus proceeded to drive the wrong way up the southbound lanes of Mt. Vernon Avenue, then veered toward a female pedestrian located in the raised median that divided the opposing lanes of traffic. The woman, later identified as April Garcia, was heading northbound towards Monterey Street. The driver of the Taurus "again jumped the center median[,] aiming the center of the vehicle towards Ms. Garcia," and came within inches of striking her. She leapt out of the way of the oncoming car, which Deputy Costamanga believed had been necessary in order for her to avoid being hit.

Ms. Garcia further reacted by running "full sprint" across the road to a sidewalk on the eastern side of Mt. Vernon Avenue. Next, according to Deputy Costamagana, the Taurus "turned directly east" until it was "aimed directly center of Ms. Garcia," then accelerated and "attempted to hit her again." Ms. Garcia jumped out of the way a second time, and the vehicle came to rest with its front two wheels on the sidewalk in the area where she had been standing.

3.

Deputy Costamagana activated the lights and siren of his patrol car at "about the second time the vehicle tried to strike Ms. Garcia," and was already in pursuit when the Taurus ran up onto the sidewalk.  The deputy was in the process of turning onto Monterey Street when he saw the driver of the Taurus exit the vehicle.  He noted the man was bald, "very heavily tattooed [on] his head, shoulders, [and] arms," and was wearing a sleeveless white shirt.  Deputy Costamagana identified Alvarez in court as the driver of the Taurus.  He also testified that Alvarez fled the scene on foot, ignoring his commands to stop.

Sheriff's deputies located and arrested Alvarez the next day.  When questioned about the events of the previous evening, Alvarez explained that he and April Garcia had argued about her not wanting to get his name tattooed on her arm.  He denied striking Ms. Garcia, but admitted to pulling her hair while she was driving.  Regarding his subsequent operation of the vehicle, the deputy who interviewed Alvarez testified that he said he "didn't try to actually run her over."  Rather, "she had gotten in the way twice while he was trying to get away from deputies."

The victim did not testify at trial.  Relevant to her absence was an audio recording of a jailhouse phone call between Alvarez and an unidentified woman, which was played for the jury during the prosecution's case-in-chief.  Pertinent excerpts from the recorded conversation are as follows:

> Alvarez:   They got me out there at April's.
>
> Female:   Uh, what'd you go to April's for?
>
> Alvarez:   I don't know.
>
> Female:   Wow.
>
> …
>
> Alvarez:   They got me for attempted murder and, uh, spousal.
>
> Female:   Okay that, what, the cops seen you do all this stuff, try and run her over and shit?

Alvarez:       But it, yeah, but it's up to, uh, April if she's going to press charges. . . . So I don't know if she's going to press charges on me or not.

…

Alvarez:       . . . Tell her to press no charges on me.

Female:        Oh, like she's really going to listen.

Alvarez:       Well I don't know you got to find out and ask her you, (inaudible). All right?

Female:        (Inaudible.)

Alvarez:       So I don't know but you got to ask her though (inaudible), all right?

Female:        Yeah.

Alvarez:       I know if she does that'll be great. I'll be out. I'll be going home.

Female:        I don't even know why you stoop your ass to do stupid (inaudible) to begin with, like you already know.

Alvarez:       Yeah I know. So just talk to her and let, and just tell [her] not to do it.

Defense Evidence

An investigator for the Kern County Public Defender testified in regards to photographs she had taken in an apparent effort to depict Deputy Costamagana's vantage point from the corner of Mt. Vernon Avenue and Niles Street. The photographs were admitted into evidence. The defense also elicited testimony from Karina Dominguez, who had witnessed portions of the incident from her place of employment at the corner of Mt. Vernon Avenue and Lake Street.

Ms. Dominguez recalled seeing a man and woman arguing inside of a sedan on Lake Street. She could not tell if the couple was engaged in a physical altercation, but

she heard the woman screaming and then saw her exit the vehicle and run to the center median of Mt. Vernon Avenue. The driver of the sedan "tried to go toward where the woman was," i.e., "[h]e started coming out of Lake Street towards Mt. Vernon going towards Niles Street and then the car got on top of the median… When the woman saw that, she jumped toward the right side." When asked to clarify her observations, the witness said, "She was in the median. The car came. She jumped to the left side. The car jumped to the left side. Then she jumped to the right side and the car jumped to the right side following the woman."

Although her account was generally consistent with the testimony of Deputy Costamagana, Ms. Dominguez claimed to have seen the victim try to reenter the sedan on the passenger side after it had "jumped the median" for a second time. She testified that the vehicle came to a stop in a "diagonal" position on Mt. Vernon Avenue (making no mention of it going onto the sidewalk), but with the caveat that she could "barely recall" those details. The witness acknowledged on cross-examination that her sightlines had been partially obstructed by various objects and her memory of the events was less than clear.

Verdict and Sentencing

The jury convicted Alvarez of attempted voluntary manslaughter as a lesser included offense of attempted murder. He was found guilty as charged on the remaining counts. In a bifurcated bench trial, the trial court found the prior conviction allegations to be true and thereafter dismissed the prior prison term allegations at the request of the prosecution. Alvarez was sentenced to the upper term of five years six months imprisonment for attempted voluntary manslaughter, which was doubled to 11 years because of the prior strike and further enhanced by a consecutive five-year term for the prior serious felony conviction. He received a stayed sentence pursuant to section 654 for the conviction of assault with a deadly weapon, and credit for time served on a concurrent term imposed for the resisting arrest misdemeanor.

DISCUSSION

**Disputed Evidentiary Rulings**

Alvarez presents related claims of erroneously excluded evidence and judicial bias. He argues the trial court erred by prohibiting defense witness Karina Dominguez from expressing an opinion about his state of mind at the time of the incident. Alvarez further contends that there is a federal constitutional dimension to this issue because the trial court permitted Deputy Costamagana to express opinions regarding the element of intent, and thus applied a "double standard" which favored the prosecution and violated his right to present a defense and receive a fair trial.

Background

The following exchanges occurred during the prosecution's direct examination of Deputy Costamagana:

| | |
|---|---|
| Prosecutor: | What was April Garcia doing when the vehicle jumped the median the second time? |
| Costamagana: | She was actually standing in the center of it and I believe she ended up having to jump to her left, basically jumping east to get out of the way of the vehicle. |
| Defense Counsel: | Objection. Speculation. Move to strike. |
| Trial Court: | What's the basis of the objection? |
| Defense Counsel: | Speculation. |
| Trial Court: | Overruled. |
| … | |
| Prosecutor: | After Ms. Garcia sprinted to the sidewalk on the east side of Mt. Vernon, what did the Ford Taurus do? |
| Costamagana: | It turned directly east and was aimed directly center of Ms. Garcia and attempted to hit her again. |
| Defense Counsel: | Objection. Speculation. |

7.

Trial Court: It's clear it's based on his observation. Overruled.

The disputed rulings made during direct examination of Karina Dominguez are as follows:

Defense Counsel: You've described a lot. The car was going toward the woman. You described the manner in which it was going. Was it going toward like it was trying to hit her or what was it trying to do?

Prosecutor: Objection. Calls for speculation. Foundation.

Trial Court: Sustained on both grounds.

Defense Counsel: What was the vehicle trying to do?

Trial Court: Same ruling. Sustained on both grounds.

Defense Counsel: When you say it was going toward her, what do you mean?

Dominguez: Following her.

Defense Counsel: Describe how it was following her.

Dominguez: I don't understand the question.

Defense Counsel: Was it trying to hit her?

Prosecutor: Objection. Same objection.

Trial Court: Sustained. She can't testify as to what someone else's intent was.

Defense Counsel: What did it appear to you the car was doing?

Prosecutor: Same objection, Your Honor.

Trial Court: Sustained.

On cross-examination, Ms. Dominguez acknowledged she had been "too far away to tell how close the vehicle was when it drove toward the [victim]." The prosecutor then asked her to confirm that she previously told his investigator she could not discern whether the victim had to jump out of the way of the car (to avoid being hit). When the witness replied, "I don't recall," the prosecutor asked, "As you sit here today, can you

8.

recall if the female had to jump out of the way of the car or do you not know?" At that point the trial court interrupted: "I'll interpose my own objection to that question. It seems to me you're asking her to comment on the state of mind."

During a break in questioning, outside the presence of the jury, defense counsel accused the trial court of making inconsistent rulings on the admissibility of opinion testimony: "The People were allowed to [introduce] testimony about my client's state of mind by a trained law enforcement officer. When I tried to do it, albeit ineloquently, the Court prevented me. I lodged the exact same objection as [the prosecutor], exact same. The Court overruled my objections. I objected numerous times… [T]he officer was allowed to testify that the car turned eastbound and tried to hit her, and I object and the Court overrules my objection and I'm not allowed to get into it with a lay witness, it's fundamentally unfair to my client's defense. It violates his 14th Amendment due process rights. It allows him not to present a defense."

The trial court disagreed with defense counsel, stating, "I think I've been consistent in that regard but that's the reason we have a record and if I'm incorrect, the record is preserved. The distinction, as I recall it, is I thought the questions asked of the officer were not directed and would not reasonably be understood by the jury to be a comment on the intent of the driver, whereas I thought that some of your questions were phrased in such a way as to indicate that the response would be a comment on the intent of the driver. I think in both instances I tried to make it clear on the record in front of the jury that neither witness is competent to testify as to the intent of the driver. I did not – I thought I made it clear both at sidebar and immediately thereafter when you're on the record that you can rephrase the question as long as it was clear that you were eliciting her observation as opposed to her speculation of the intent of the driver."

Later, while instructing the jury, the trial court gave an admonishment: "During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and no other. Deputy Costamagana and Karina

9.

Dominguez testified about their observations of the vehicle in question. They are not able to give testimony as to what was in the driver's mind at the time of their observations. Any opinions that they may or may not have about the driver's state of mind are not to be considered by you for any purpose. Their testimony on that point is relevant and admitted only for the purpose of informing you what they observed. Any conclusions to be drawn from their observations are up to the jury and the jury alone to make."

Forfeiture

Respondent asserts that Alvarez forfeited his claims regarding the questioning of Ms. Dominguez on direct examination by failing to make an offer of proof as to how she would have responded had the prosecutor's objections been overruled. Respondent also points out that the trial court's sua sponte objection to testimony concerning whether the victim needed to jump out of the way of the oncoming car happened on cross-examination and without protest from defense counsel, thereby foreclosing appellate review of any related claims. We agree with the second argument, but not the first.

"As a condition precedent to challenging the exclusion of proffered testimony, Evidence Code section 354, subdivision (a), requires the proponent make known to the court the 'substance, purpose, and relevance of the excluded evidence … .' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1178.) The necessary information may be determined "by the questions asked, an offer of proof, or by any other means." (Evid. Code, §354, subd. (a).) However, "even where the *question* is relevant on its face, the *appellate court* must know the 'substance' or content of the *answer* in order to assess prejudice. [Citation.] This requirement is met only where the wording or context of the question makes the expected answer clear, or where the proponent of the evidence makes an offer of proof." (*People v. Whitt* (1990) 51 Cal.3d 620, 648; accord, *People v. Anderson* (2001) 25 Cal.4th 543, 580.)

Here, the general substance of the excluded testimony is evident from the limited universe of possible responses to defense counsel's questions. Ms. Dominguez either believed Alvarez was trying to hit the victim with the car, did not believe he was trying to hit her, or had no opinion on the subject. Counsel presumably anticipated, or at least hoped, that the witness would provide a response favorable to the defense. Therefore, the claim has been preserved for our review. However, as we will explain, Alvarez's failure to make an offer of proof seriously undermines his ability to demonstrate prejudice.

Standard of Review

"A trial court's decision to admit or exclude evidence is reviewable for abuse of discretion." (*People v. Vieira* (2005) 35 Cal.4th 264, 292.) This standard applies to a ruling that a question calls for speculation from a witness as opposed to admissible lay opinion. (*People v. Thornton* (2007) 41 Cal.4th 391, 429 (*Thornton*).) The improper exclusion of lay opinion testimony is an error of state law and subject to the test for prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130-131 (*DeHoyos*).)

Appellant's attempt to frame his arguments in terms of constitutional due process is unconvincing. While claims of judicial bias implicate the constitutional right to an impartial judge, such allegations are reviewed on the basis of the entire record and with the presumption that the trial court acted in good faith. (*People v. Peoples* (2016) 62 Cal.4th 718, 788-789; *People v. Chatman* (2006) 38 Cal.4th 344, 364; see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Furthermore, "a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112.) Even if the rulings in question are interpreted as being inconsistent, the record as a whole does not establish judicial bias or otherwise show Alvarez was deprived of " ' "a fair, as opposed to a perfect, trial." ' " (*Ibid*.)

11.

Case law holds that a "mere limitation on the form of evidence presented" does not amount to a violation of the due process right to present a defense. (*People v. Carlin* (2007) 150 Cal.App.4th 322, 335.) "Where a trial court's erroneous ruling is not a refusal to allow a defendant to present a defense, but only rejects certain evidence concerning the defense, the error is nonconstitutional and is analyzed for prejudice under *Watson*, *supra*, 46 Cal.2d 818—i.e., the judgment should be reversed only if it is reasonably probable that the defendant would have obtained a more favorable result absent the error." (*People v. Garcia* (2008) 160 Cal.App.4th 124, 133.) Since the challenged rulings in this case "merely rejected some evidence concerning a defense," any error in that regard must be evaluated under the *Watson* standard. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203.)

Analysis

The parameters of a trial court's discretion to admit lay opinion testimony are well summarized in *DeHoyos*, *supra*: " 'A lay witness may express an opinion based on his or her perception, but only where helpful to a clear understanding of the witness's testimony (Evid. Code, § 800, subd. (b)), "i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed." [Citation.]' (*People v. Hinton* (2006) 37 Cal.4th 839, 889.) Such a situation may arise when a witness's impression of what he or she observes regarding the appearance and demeanor of another rests on 'subtle or complex interactions between them' (*ibid*.) or when it is impossible to otherwise adequately convey to the jury the witness's concrete observations. [Citations.] A lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind." (*DeHoyos*, *supra*, 57 Cal.4th at p. 130.)

Although defense counsel's rephrasing of his question in terms of what the car appeared to be doing may have allowed for an admissible response, it was within the trial court's discretion to make the threshold determination of whether or not the witness

could otherwise adequately describe her observations without using opinion wording. (*DeHoyos*, *supra*, 57 Cal.4th at p. 130; *People v. Miron* (1989) 210 Cal.App.3d 580, 583 ["Where the witness *can* adequately describe his observations, his opinion or conclusion is inadmissible because it is not helpful to a clear understanding of his testimony."].) Whereas Deputy Costamagana had provided specific information about the positioning of the Ford Taurus, its speed, and the distances between the car and the victim ("it appeared to be inches" away from her both times that she jumped), Ms. Dominguez only said the vehicle was "following her" and "trying to go toward where she was." The subject matter may have involved nuanced details, but the admissibility of opinion testimony at the time of the prosecution's objections was not a clear-cut decision, hence the discretionary nature of the court's ruling. (Cf. *Thornton, supra,* 41 Cal.4th at p. 429 [trial court could reasonably rule that asking whether two vehicle occupants were acting as if they knew each other called for speculation].) We conclude it was not outside the bounds of reason for the trial court to sustain the objections.

Were we to assume the trial court erred by prohibiting lay opinion testimony, Alvarez's claim would fail for lack of prejudice. Defense counsel was obviously hoping to elicit favorable testimony, but Ms. Dominguez proved to be an unpredictable witness. There were multiple occasions where she answered "No" or "I don't recall" to questions prefaced by words to the effect of, "Do you remember telling my investigator…?" It is far from certain, or even likely, that the witness would have opined Alvarez was not trying to strike April Garcia with the car. The absence of an offer of proof on that point effectively precludes a finding of prejudice. Moreover, the witness's opinion would have been qualified by her admitted inability to gauge how close the car came to hitting the victim. On the other hand, the jury heard Alvarez essentially admit to harboring a wrongful intent on the jailhouse recording (i.e., answering "yeah" when asked if police had seen him "try and run her over"). Given all of these circumstances, it is not

13.

reasonably probable Alvarez would have obtained a more favorable verdict had the trial court overruled the prosecutor's objections.

**Instructional Error**

The trial court believed it had a sua sponte duty to instruct the jury on attempted voluntary manslaughter as a lesser included offense of attempted murder under Count 1. The parties objected to such an instruction, with both sides arguing that the record did not contain substantial evidence of provocation. In response, the trial court claimed the standard for instructing on lesser included offenses was something "far below substantial evidence," and ruled that proof of a verbal and/or physical altercation between the defendant and victim amounted to "circumstantial evidence from which the jury could derive an opinion that there was a fight in the heat of passion." Accordingly, the jury was instructed pursuant to CALCRIM No. 3517 (Deliberations and Completion of Verdict Forms: For Use When Lesser Included Offenses and Greater Crimes Are Not Separately Charged … (Non-Homicide)) and CALCRIM No. 603 (Attempted Voluntary Manslaughter: Heat of Passion--Lesser Included Offense …).

Alvarez maintains the trial court erred by giving the lesser included offense instruction on Count 1, and argues the error led to a conviction that is subject to reversal for insufficient evidence. He further contends that the error resulted in a violation of his constitutional rights. The claim of instructional error has merit, but there is no basis for reversal.

Standard of Review

"Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' " (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568, quoting *People v. Waidla* (2000) 22 Cal.4th 690, 733.) We therefore apply the de novo standard of review. Appellant's claims again involve matters of state law, and the issues presented do not reach constitutional proportions. It is settled that the *Watson* standard

14.

applies when a trial court errs by giving an instruction "which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130; accord, *People v. Debose* (2014) 59 Cal.4th 177, 205-206; *People v. Perez* (2005) 35 Cal.4th 1219, 1233.)

Analysis

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. [Citation.] Attempted murder requires express malice, that is, the assailant either desires the victim's death, or knows to a substantial certainty that the victim's death will occur." (*People v. Booker* (2011) 51 Cal.4th 141, 177-178.) Attempted voluntary manslaughter is a lesser included offense of attempted murder, with the distinguishing factor being the absence of malice. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1241; § 192, subd. (a).)

The California Supreme Court's opinion in *People v. Rios* (2000) 23 Cal.4th 450 (*Rios*) provides an in-depth analysis of the difference between murder and voluntary manslaughter. " 'Generally, the intent to unlawfully kill constitutes malice. [Citations.] "But a defendant who intentionally and unlawfully kills [nonetheless] lacks malice … when [he] acts in a 'sudden quarrel or heat of passion' (§ 192, subd. (a)), or … kills in 'unreasonable self-defense'- the unreasonable but good faith belief in having to act in self-defense [citations].' " (*Rios*, *supra*, 23 Cal.4th at p. 460.) "These mitigating circumstances reduce an intentional, unlawful killing from murder to voluntary manslaughter 'by *negating the element of malice* that otherwise inheres in such a homicide [citation].' [Citation.] *Provocation* has this effect because of the words of section 192 itself, which specify that an unlawful killing that lacks malice because committed 'upon a sudden quarrel or heat of passion' is voluntary manslaughter." (*Rios*, *supra*, 23 Cal.4th at p. 460.)

The ultimate holding in *Rios* appears to defeat appellant's arguments regarding the sufficiency of the evidence supporting the jury's verdict on Count 1. Although

15.

section 192 defines manslaughter as an unlawful killing committed without malice, "a conviction of voluntary manslaughter may be sustained upon proof and findings that the defendant committed an unlawful and intentional homicide. *Provocation and imperfect self-defense are not additional elements of voluntary manslaughter which must be proved and found beyond reasonable doubt in order to permit a conviction of that offense*." (*Rios*, *supra*, 23 Cal.4th at pp. 469-470, italics added.) If provocation is not an element of voluntary manslaughter, it stands to reason that the same is true for the crime of attempted voluntary manslaughter. Therefore, while evidence of provocation is a prerequisite for jury instructions on a heat of passion theory, the absence of provocation is not alone sufficient to invalidate a conviction for attempted voluntary manslaughter. (See *id*. at pp. 463, fn. 10 ["Because a greater inclusive offense 'cannot be committed without also committing [a] lesser [offense necessarily included therein]' [citation], facts that would support a conviction of the greater offense necessarily allow a conviction of the lesser."].)

Attempted murder and attempted voluntary manslaughter share the essential element of intent to kill. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1545, 1549-1550.) The evidence in this case is plainly sufficient to support a conclusion that Alvarez acted with the intent to kill and under circumstances satisfying all other requirements for attempted murder. Since the elements of attempted voluntary manslaughter are necessarily included in the crime of attempted murder, the Count 1 conviction is not subject to attack on grounds of insufficient evidence. (See *People v. Milward* (2011) 52 Cal.4th 580, 587 [pursuant to the analysis in *Rios*, "a defendant who commits an unlawful killing *with malice* can be convicted of manslaughter"]; see also discussion, *post*.)

We now turn to the direct issue of instructional error. Contrary to the trial court's assertions, the sua sponte duty to instruct on a lesser included offense arises "only if there is substantial evidence supporting a jury determination that the defendant was in fact

16.

guilty only of the lesser offense." (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.) In order for the trial court to conclude the jury could find Alvarez was guilty *only* of attempted voluntary manslaughter, there had to be substantial evidence of provocation. (*Ibid.*; *Lee, supra,* 20 Cal.4th at p. 59 ["Although section 192, subdivision (a), refers to 'sudden quarrel or heat of passion,' the factor which distinguishes the 'heat of passion' form of voluntary manslaughter from murder is provocation."].)

"A heat of passion theory of manslaughter has both an objective and a subjective component." (*People v. Moye* (2009) 47 Cal.4th 537, 549.) From an objective standpoint, the provocation must be such as would "render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 957; accord, *People v. Steele* (2002) 27 Cal.4th 1230, 1252 (*Steele*) [the " 'heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances … .' "].) In simple terms, the test is whether "an average, sober person would be so inflamed that he or she would lose reason and judgment." (*Lee, supra,* 20 Cal.4th at p. 60.) To satisfy the subjective component, a defendant must be shown to have acted in the heat of passion because he was in fact provoked. (*Steele, supra,* 27 Cal.4th at p. 1252.) Both aspects require proof of instigating behavior by the victim, meaning "the victim must taunt the defendant or otherwise initiate the provocation." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.)

Here, the only potential evidence of provocation was Alvarez's statement that he argued with the victim after she balked at the idea of tattooing his name on her arm. Even accounting for the changing mores of society, it is safe to say that no reasonable person could experience the heat of passion required to negate the element of malice in an attempted murder case simply because a romantic partner declined to tattoo a name on his or her body. There was insufficient evidence to support the attempted voluntary manslaughter instruction, and the trial court erred by providing it to the jury.

17.

Regarding prejudice, the circumstances here are similar to those in *Powell*, *supra*. The evidence in that case established the defendant's culpability for murder, but the trier of fact inexplicably convicted him of manslaughter. On appeal, the defendant characterized the verdict as a "compromise determination" and argued for reversal on grounds that the law did not allow for a conviction of manslaughter "where the only evidence presented tended to indicate that [he] was guilty of murder in the second degree or of no crime whatsoever… ." (*Powell*, *supra*, 34 Cal.2d at pp. 198, 205.) The California Supreme Court rejected this argument for the following reasons: "It cannot be doubted that a trier of fact has and often exercises the power, because of obvious extralegal factors or for no apparent reason, to find a defendant guilty of a lesser degree or class of crime than that shown by the evidence. Furthermore, even if it be assumed that the trier of fact erred here when he found defendant guilty only of manslaughter, defendant cannot invoke reversal on an error which is favorable to him. [Citations.] An appellant is precluded from complaining that he was convicted of a lesser offense than the one of which he is guilty according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted." (*Id*. at p. 205, italics and fn. omitted.)

In *Lee*, *supra*, a plurality of the California Supreme Court concluded that the First District Court of Appeal erred by not applying the *Powell* rule to uphold a defendant's conviction for voluntary manslaughter despite insufficient evidence of provocation. (*Lee*, *supra*, 20 Cal.4th at pp. 51-52.) The *Lee* case is closely analogous to the present matter because it involved the giving of an unwarranted jury instruction on voluntary manslaughter as a lesser included offense of murder. The plurality opinion states, in pertinent part:

> "When, as here, a jury necessarily finds all of the facts required for a
> conviction of murder, but convicts the defendant of voluntary
> manslaughter, any error in that conviction is favorable to the defendant.

18.

The *Powell* criteria are satisfied in these circumstances. In finding that the killing was intentional, the jury indisputably found all of the facts necessary to establish second degree murder. The jury was instructed that intent to kill is an element of voluntary manslaughter. Under section 188 this intent to kill is sufficient to establish malice. Thus, the jury necessarily found an unlawful killing of a human being in which malice aforethought was present unless malice was negated by heat of passion or, under the instructions given, by voluntary intoxication. Therefore, assuming as we do that there was insufficient evidence of heat of passion to negate malice, defendant was 'convicted of a lesser offense than the one of which he is guilty . . . according to that view of the evidence which, it indisputably appears, the trier of fact accepted.' (*Powell*, *supra*, 34 Cal.2d at p. 206.) He may not 'invoke reversal on an error which is favorable to him.' " (*Lee*, *supra*, 20 Cal.4th at pp. 64-65.)

In a concurring opinion, Justice Brown analyzed the issue solely in terms of the sufficiency of the evidence: "[A]lthough a trial court should not instruct on a lesser included offense 'when there is no evidence that the offense was less than that charged' [citation], it *does not* follow that if a trial court nonetheless instructs and a jury nonetheless convicts, the conviction of the lesser included offense should be reversed for insufficient evidence. To the contrary, because evidence of the greater offense was sufficient, evidence of the lesser included offense is *necessarily* sufficient." (*Lee*, *supra*, 20 Cal.4th at p. 67 (conc. opn. of Brown, J.).)

Alvarez tries to distinguish *Powell* and *Lee* by arguing the jury's rejection of the prosecution's attempted murder theory proves its belief that he did not act with an intent to kill. Following this reasoning, he alleges the jury would have acquitted him on Count 1 had the trial court not given it the option to convict him of attempted voluntary

19.

manslaughter, and, therefore, he did not receive a more favorable disposition as a result of the instructional error. We are not persuaded.

It is a recognized phenomenon that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." (*Keeble v. United States* (1973) 412 U.S. 205, 212-213.) The classic all-or-nothing scenario did not exist in this case because Alvarez also faced liability under Count 2, which alleged the commission of assault with a deadly weapon by use of an automobile as a lethal instrument. The jury actually submitted a question on this issue, asking, "Does ruling a certain way on Count #1 out-rule or affect the ruling on Count #2 or vice versa?" The trial court replied, "No, you must consider each count separately and return a separate verdict for each one. Please refer to [CALCRIM] No. 3515"

The crime of assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The jury's guilty verdict on Count 2 thus confirms its belief that Alvarez tried to hit Ms. Garcia with the car. If the jury was not also convinced Alvarez intended to kill her, it could have easily rejected all theories of liability for Count 1 knowing he would still be held accountable for his actions under Count 2. Alvarez's hypothesis necessarily presumes the jury convicted him of attempted voluntary manslaughter without truly believing he acted with the intent to kill. We do not accept this proposition. If the *Powell* rule does not completely bar Alvarez's claim as a matter of judicial policy, it nevertheless fails under the *Watson* standard because it is not reasonably probable he would have obtained a more favorable outcome but for the instructional error.

20.

## **DISPOSITION**

The judgment is affirmed.

_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.